IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CASE NO. 2:09-CR-22-WKW |
| | ) |
| MARTIN DEJESUS | ) |

**ORDER**

On August 6, 2009, the Magistrate Judge filed a Report and Recommendation ("Report") (Doc. # 54) recommending the denial of Defendant Martin DeJesus's motion to suppress. (Docs. # 25, 29.) Mr. DeJesus filed an Objection (Doc. # 56) to the report; this court then requested (Doc. # 61) that the Government respond (Doc. # 65) to the Objection. Having considered and reviewed *de novo* the Report of the Magistrate Judge, the court finds that the motion to suppress is due to be denied.

*I. The Initial Stop*

Mr. DeJesus first argues that there was no probable cause for the traffic stop that led to his arrest. The state trooper, Charlton Martin, who made the stop justified it on the basis that he suspected the paper tag on Mr. DeJesus's vehicle was not a valid license tag, in violation of Alabama law. Ala. Code § 32-6-51.[1] Mr. DeJesus cites an Alabama case for the proposition that this statute is only violated when a tag is entirely absent, rather than simply when an "improper" tag is afffixed. *See Geeter v. State*, 45 So. 2d 167 (Ala. Ct. App.

---

[1] "Every motor vehicle operator who operates a motor vehicle upon any city street or other public highway of or in this state shall at all times keep attached and plainly visible on the rear end of such motor vehicle a license tag or license plate as prescribed and furnished by the Department of Revenue at the time the owner or operator purchases his license."

1950). *Geeter*, however, appears to have interpreted a prior version of the statute, which did not contain the words "as prescribed and furnished by the Department of Revenue . . . ." Moreover, the conviction in *Geeter* was reversed because the uncontroverted testimony of the arresting officer was that the defendant's vehicle had "'regular Alabama license plates'" on the front and rear of his vehicle, constituting a "complete refutation and denial of the charge contained in the affidavit." *Id*. at 168.

Here, by contrast, the paper tag affixed to Mr. DeJesus's car purports to be a Texas temporary license tag, but from a distance is essentially indistinguishable from a piece of paper that could be produced with a home computer and printer. Probable cause for violating the statute need not be, as Mr. DeJesus argues, based entirely on whether whatever object is attached to the back of a vehicle is "plainly visible," because the statute also requires that the object in question be a "license tag or license plate as prescribed and furnished by the Department of Revenue . . . ." Ala. Code § 32-6-51. If it is not plainly visible *that the object is a valid license tag*, an officer has probable cause to believe that the statute is being violated.

Further, this not a case where the Government has attempted to justify a stop in connection with a tag-visibility requirement on the basis of external or subjective factors such as "snow, rain, fog, glare, or even an officer's poor eyesight." *United States v. Edgerton*, 438 F.3d 1043, 1050 (10th Cir. 2006). Rather, the stop was based on the objective nature of the purported tag itself, which the record reflects was a flimsy piece of paper with the state of

issue printed in relatively small font unlikely to be readable by a person of normal visual ability from inside another moving vehicle.

Finally with respect to the initial stop, Mr. DeJesus argues that a provision in another title of the Alabama Code makes Section 32-6-51 inapplicable to nonresidents of Alabama. *See* Ala. Code § 40-12-262. That section states that "[t]he provisions *of the foregoing sections* relative to registration and display of registration numbers shall not apply to a motor vehicle owned by a nonresident of this state," if that vehicle is registered in accord with the laws of the owner's state of residence (emphasis added). Title 40 of the Alabama Code concerns revenue and taxation, and in context Section 40-12-262's reference to "the foregoing sections" logically means the sections immediately proceeding it, which contain detailed rules for the registration and taxation of vehicles in Alabama. Title 32 concerns motor vehicles and traffic, and there is no indication, via statute or judicial decision, that Section 40-12-262's exception was meant to apply to a single section appearing eight titles earlier in the Alabama Code. Nor is it entirely clear that the exclusion would apply to Section 32-6-51 on its own terms, since that section relates to the display of license tags or plates, while Section 40-12-262 refers to the "registration and the display of registration numbers."

The traffic stop was supported by probable cause that Mr. DeJesus violated Section 32-6-51.[2]

---

[2] The court further concludes that the Objection is without merit in arguing that Trooper Martin was compelled to end the stop the moment he could read the word "Texas" when walking

## II. *Duration of the Stop*

The court is not without its concerns as to some of Trooper Martin's rationalizations for his continued suspicion and detention of Mr. DeJesus and his vehicle. While it is perhaps true that drug mules frequently consume energy drinks, so do many other, innocent, people, and the fact that Trooper Martin spotted a can of an energy drink (much less other "snacks") in Mr. DeJesus's reach is not a strong basis for suspicion. Even less intelligible are Trooper Martin's observations about Mr. DeJesus's possession of dry-cleaned clothing. Finally, the court is skeptical that it would be possible to literally observe a person's clothing moving as the result of a strong heartbeat, especially when, as acknowledged by Trooper Martin, Mr. DeJesus was wearing multiple layers of clothing, as was understandable on a February morning.

Nonetheless, these questionable observations were not the sole, or even the major, rationales behind the continued detention of Mr. DeJesus. Despite the concerns about the observations mentioned above, the court must give at least some credence to Trooper Martin's observation that Mr. DeJesus appeared nervous and more ill at ease than the average subject of a traffic stop. Likewise, Trooper Martin could have considered as part of the totality of the circumstances that Mr. DeJesus's stated route from Houston to Atlanta was known to be along a major drug-trafficking corridor. Further, Mr. DeJesus does not contest that, after he gave Trooper Martin his driver's license and other documents, Trooper Martin

---

past the rear of Mr. DeJesus's vehicle. The mere appearance of the name of a state on the tag does not change the suspicious character of the tag itself.

placed a call to the El Paso Intelligence Center, an information clearinghouse for drug-related investigations. Officials there informed Trooper Martin that Mr. DeJesus was a party to an open drug-trafficking investigation. Considering the totality of the circumstances, the court cannot say that Trooper Martin lacked reasonable suspicion to detain Mr. DeJesus for the length of time (between 15 and 20 minutes, on the basis of the DVD of the stop in the record) he did prior to obtaining Mr. DeJesus's consent to search. *See United States v. Sokolow*, 490 U.S. 1, 7 (1989); *United States v. Hardy*, 855 F.2d 753, 761 (11th Cir. 1988) (upholding a *Terry* stop of 50 minutes, while citing authority that a duration of up to 20 minutes was standard).

Finally, the court disagrees, essentially for the reasons given in the Report, with the Objection's contention that Mr. DeJesus's consent to the search was not voluntary and that the search exceeded the scope of his consent. It is accordingly ORDERED that:

(1)  The Objection (Doc. # 56) is OVERRULED;

(2)  The Report and Recommendation (Doc. # 54) is ADOPTED; and

(3)  The Motion to Suppress (Docs. # 25, 29) is DENIED.

DONE this 22nd day of October, 2009.

                                       /s/  W. Keith Watkins
                                    UNITED STATES DISTRICT JUDGE